May it please the Court, Your Honor, Joseph Bida for Mr. Peguero. Words have meaning. When Judge Roman rendered his verdict in connection with Specification 4, he not only made a verdict, but he also made findings of fact. And what those findings of fact showed is that the verdict that he rendered was based upon a misinformation, erroneous view of what the facts needed to be found in order to establish that the- The basis of your argument then is an error of fact and not an error of law. No, the basis of my argument is that Judge Roman found facts, but those facts did not establish as a matter of law the crime of assault second degree, which is the verdict that he rendered. Because he- your position is that he had to have used a weapon and that he was not clear as to whether or not it was the hand or the glass. That's correct. He found that Mr. Peguero held an item- Isn't that a hyper-technical reading of what was said here? The quote is that your client picked up a glass make-up bottle, held it in his left hand and punched- I was reading what the victim stated, but the judge said punched while holding a glass bottle in his hand. The testimony from the victim, which I was reading from, was that she was hit with the bottle. There was no other testimony to the contrary. So you're suggesting that he failed to make a finding of fact, even though the only version of events of how the injury was caused was with the bottle, right? That's not- Your Honor, with all due respect, number one, the complainant did not testify. The evidence was in the form of various statements that the complainant made, which were not consistent. Her sworn statement was that she was hit with the bottle. And that the bottle caused her injury. That is her sworn statement. Now, if Judge Roman had indicated that those were the facts, I would not be making this argument today. But I'm suggesting to you it's implausible that he was making some other finding where there was no evidence in the record to support that she was only hit with a hand as opposed to the bottle. That's my suggestion. Well, actually, the evidence that would support the finding that she was hit with her hand and not with a bottle were her other statements that she made prior to the sworn statement that she made the next day. Wasn't this also specifically discussed by both attorneys during the summation? The prosecutor said, you know, you need an object. So the prosecutor was pointing out to the judge that this was a requirement and that it was satisfied. And then the defense lawyer said, assault two requires a weapon. Judge, I'll read it now, judge. It requires two things. It requires a weapon and it requires intentional act. So even the lawyers were focusing the judge on the need to have a weapon. And you think, you still think the judge was oblivious to that? I don't think the judge was oblivious to that. I made the argument. I specifically told Judge Roman, to have an assault two, you have to have a weapon and the weapon has to be the cause of the physical injury. Those are the elements. And I specifically argued to Judge Roman those facts. And I also argued to Judge Roman, if you don't find that a weapon was used and caused the injury, then it would be a down charge of assault three. Now Judge Roman made his findings, which did not satisfy all the elements that assault second required. Obviously, the government's argued that the clear import was that Pecora hit her with a bottle. Those are the government's words. Clear import. Look, words mean what they say. I'm holding a pen in my left hand. I'm pounding the table with my right hand. I'm in possession, holding an item and I'm hitting somebody or hitting something. But the elements do not require more than that.  All right. And again, the facts that Judge Roman found did not meet the elements of the crime he found my client guilty of. And it's not harmless in this case, Judge. If you look at the specific sentences that were given on the various counts, Judge Roman was very clear in giving within or below guideline sentences on all the counts, with the exception of the specification four. You concede, if we were to send it back, if he were to say, I find, as you're suggesting, I find the injury was caused by the bottle, that would be, on that issue, I know you have the second issue about the admission of the statement. But in terms of the sufficiency, certainly he could credit her sworn statement on that, right? Let me put it this way, Judge. You're going to have to send it back anyway on the third argument I'm making. And perhaps if it's appropriate. I'm sorry. Would you say that again? Yes. There is a third point that was made, point three, which involved a clear error in the judgment that was rendered in this case. And I think both sides conceded on that. So the matter's going to have to go back to Judge Roman anyway. If you send it back to Judge Roman with instructions as to clarification of You're sending it back just for him to cross out one number and put in another. That's not exactly what we usually mean by a remand. No, I understand that. But again, Judge Bianco suggested the possibility that if Judge Roman reviewed his own words, perhaps he could make a verdict that would be consistent with what his actual intention was. I say that because you can't rely upon a clear import of words. Words mean what they say. And the words that he used in describing his findings simply did not establish assault in the second degree as a matter of law. Do you want to spend a minute on the second issue? Sure. Again, we have a situation where we have a witness who was available to testify. You have a witness who gave inconsistent statements. You have a witness who was an interested witness. And you have a witness who should have been cross-examined so that Judge Roman could have assessed her credibility and made appropriate findings of fact. And in this case, the major reason that Judge Roman said How do you distinguish the Carfin case? Well, in this case, there was a clear statement by, I'm hoping by A167, by Ms. Dixon who indicated that she was not fearful, not afraid of Mr. Piguero. That had nothing to do with the reason that she did not want to testify. It involved her concern about her health issues. But didn't she say that she did not want to testify because she had suffered seizure and anxiety from both incidents of domestic violence and was afraid to have to relive them and re-trigger her medical issues? She did indicate her concerns about her medical condition. A medical condition related to domestic violence. It wasn't just general medical conditions, right? Again, whether the conditions were related to medical, domestic violence or not, there was no, certainly no medical record to substantiate that. We haven't said, as Judge Sack pointed out over and over again, you said Carfin and Harris, that domestic abuse victims, it's good cause if the judge concludes that they will be impacted psychologically by having to testify at the hearing. And you want us to find it's an abuse of discretion to follow these cases that we've articulated. Again, because of the inconsistencies and the critical importance of her statement and the lack of a cross-examination, I believe under those circumstances, the exercise of discretion should have been the other way in having her testify. Thank you, Judge. All right, we'll hear from the government. Good morning, Your Honors. May it please the court. My name is Shiva Logarajah. I'm an assistant United States attorney in the Southern District of New York. I represent the government on this appeal. I also represented the government below during the revocation proceedings. Your Honors, Judge Roman did not abuse his discretion or commit clear error when he found that this defendant committed this New York State crime of assault in second degree. Judge Roman clearly understood the elements of that crime as evidenced by his extensive colloquy with defense counsel on this issue, and that's contained at Appendix 126 to 130. And his findings were well supported by the evidence in the record, which included a 911 call from the victim, statements from the victim, law enforcement testimony, and photographs of the injury at issue. So Mr. Paguero is going to prison for 28 months without the right to confront the complaining witness against him. Does that feel right to you? Your Honor, this court has repeatedly said that the Confrontation Clause does not apply in revocation proceedings. And in fact, there is a test under Rule 32.1 as to whether or not the government establishes good cause for whether or not a victim or another declarant can be unavailable. Sure, but the rule doesn't override the amendment. The question is whether the Sixth Amendment right applies. And it certainly doesn't apply in parole or probation proceedings, but it seems to me the supervised release proceedings may be different. The state here charged an assault felony and then dropped it because they couldn't prove it. And then suddenly the U.S. Attorney's Office picks it up and runs with it? Your Honor, and again, the test in revocation proceedings is a statutory test under Rule 32.1. And it's a clear balancing test. And Judge Ramon clearly took in his written opinion, he took into account the defendant's right to confront the victim. But on the other hand, under this court's precedent, he also had to weigh the government's reasons for not producing the victim in this case and the reliability of the hearsay. The line of cases that you're relying upon is built on a fiction that this is not a criminal prosecution and that the Sixth Amendment only applies in a criminal prosecution. What we have here is a charge by the government that if proven will result in Mr. Peguero going to prison for 28 months or certainly more than a year. And it was a prosecution originally brought on the state court and dropped because there's not enough evidence. How is that not a criminal prosecution to which the Sixth Amendment attaches? Your Honor, again, I would say that this court has repeatedly emphasized that the right for the defendant to confront a victim or another declarant is established under Rule 32.1 in a supervised release proceeding. Speak up on my side. Speak up a little bit. The right for a defendant to confront a declarant in a supervised release proceeding is established under Rule 32.1. And there is a clear test for whether or not there is good cause for the declarant not being available to be cross-examined. And, Your Honor, again, I would say that it's not only Carleton, but there were several cases after that, including Lloyd, which re-emphasized that it's 32.1 that controls here. And, Your Honor, again, I would just say that the district court did weigh the defendant's interest in cross-examining the victim here. And the district court also weighed the reliability of the hearsay here. So the only statement that came in under Rule 32.1 was the signed and sworn statement of the victim. But that's really an evidentiary issue. I'm talking about a constitutional problem. I mean, 32.1 can't override the Sixth Amendment, can it? The question is whether the Sixth Amendment applies. I understand it doesn't apply in parole or probation revocation proceedings. Yes, Your Honor. And, again, I think that, as this court emphasized in Carleton, the full panoply of rights that criminal defendants generally enjoy are not present in the supervised release proceeding. And that flows from the Supreme Court's ruling in Morrissey v. Brewer. Yeah, Morrissey v. Brewer, 1972. A few things have happened in Sixth Amendment jurisprudence since 1972. In fact, supervised release didn't exist in 1972. It came in in 1987. So it's not clear to me that there's been a careful analysis of whether the Sixth Amendment right applies in the supervised release context. Again, Your Honor, I think that the balancing test does appropriately take into account the defendant's right to cross-examine a victim in a supervised release proceeding. And on the other hand, it does take into account the government's reason for not producing the victim and also the reliability of the hearsay. I just want to underscore the reliability of the hearsay here in terms of fairness to the defendant. It wasn't just the sign-and-sworn statement in this case. There was a 911 call. There was law enforcement testimony. There was an excited utterance that she gave. I understand all of that. But let me just try to point out what I think is a significant difference between probation and parole revocation and supervised release revocation. Because Morrissey, as I noted, didn't deal with the latter. So in a probation or parole revocation hearing, the defendant has been indicted, given the opportunity to waive the right to a jury trial, has the right to confront witnesses or waive that right. In a revocation proceeding where the crime at issue is now, what, 15, 20 years after the original indictment, to suggest that this is part of the same criminal proceeding as the original supervised release seems far-fetched constitutionally, doesn't it? Your Honor, certainly it's not the same crime. The defendant committed a state crime while on supervised release. But again, I think that this court, again, has repeatedly taken up this issue and has reaffirmed the 32.1 standard in terms of whether or not a declarant needs to be available during a revocation proceeding. Your Honor, I would also just emphasize that the record here, as I alluded to earlier, clearly supported Judge Ramon's finding that the defendant committed assault in the second degree. There were 911 calls. There were statements from the victim. There was law enforcement testimony. All of that suggests that Judge Ramon did not abuse his discretion or commit clear error in making his finding. For these reasons, Your Honor, the government would ask this court to affirm the judgment as pronounced by Judge Ramon and remand for the sole purpose of correcting a clerical error in the written judgment. Thank you. Thank you. Okay, Mr. Avita, you have three minutes in rebuttal. Okay. Very quickly, if the evidence in this case consisted of the 911 call, the victim's statements to the police, her statements in DIR, and all the other evidence in this case, other than the deposition that she signed the next day, the best, worst verdict we would have had is assault in the third degree, all right? When the police did their investigation, she never mentioned about being hit, struck with a bottle. They never looked for a bottle, all right? It was simply an afterthought the next day by the complainant after she had time to reflect upon what happened, and she, well aware of the consequences of assault second degree allegation, first brought that to the attention of the police. That is why it was critical that the defense be given the opportunity to cross-examine this particular witness regarding a criminal case that had been dismissed a year or two before, all right? And for that reason, the way that Judge Roman made in terms of whether to allow cross-examination of a real witness versus... Am I right that she also had a laceration across her... There was a laceration on the top of her... There was a... Correct. There was a laceration on the top of her head. That's correct. Part of the medical records case. And also a 911 call. You wouldn't necessarily expect the victim to be mentioning what types of weapons are used on a 911 call. The suggestion that, you know, her statement to the police the next day is lacking credibility because she didn't mention a bottle in a 911 call, I think, is not the strongest argument. It's not the strongest, but she did not mention a weapon in a 911 call. She said she was punched, and when she was interviewed by the police, when they responded to the scene, didn't mention anything about a weapon. Punched, punched. And that was the state of facts that the police investigated at the time they did the investigation, and only the next day, when she had time to reflect, did we hear about a weapon being utilized. I'll rest upon my further arguments, Judge. Thank you. All right. Thank you. Thank you both. We'll reserve decision. Have a good day. Thank you, Your Honor. Thank you.